UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>WENBIN LIN,<br>Defendant. | CASE NO. 25-cr-197<br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Defendant Wenbin Lin's Motion to Suppress. Dkt. # 27. Defendant contends that the fruit of an unlawful seizure, primarily the testimony of a responding agent, must be suppressed. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, the Court DENIES the motion. Dkt. # 27.

## II
## BACKGROUND

The following facts are undisputed. *See* Dkt. # 27 at 1-2; Dkt. # 30 at 23. On February 6, 2025, Border Patrol Agent Egbert was performing "line-watch" duty in Blaine, Washington,

along the United States and Canadian border.[1] Dkt. # 27-1 at 3. He was in an area he knew was a common location for unlawful border activity due to an easily crossed border location and access to a nearby highway. *Id.*; Dkt. # 30-1 at 3.[2] At about 6:40 p.m., Border Patrol dispatch advised Agent Egbert that they had seen on camera a person walking in Canada on a road that runs along the border. Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; *see also* Dkt. # 27-2. Shortly after, dispatch reported that the same person had crossed into the U.S. and was walking southbound. Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; *see also* Dkt. # 30-2. The person was observed in the woods north of the intersection of 4th and A Streets. Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; *see also* Dkt. ## 27-2, 30-2.

Agent Egbert, who had been parked at the intersection of 4th and A Streets, left his vehicle and searched for the individual. Dkt. # 30-1 at 3. Agent Egbert stated that, while searching, he observed a white Mercedes drive past him and park at the east end of A Street with its hazards on.[3] Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; Dkt. # 33-2 at 3 (correcting previous misstatement that the white Mercedes parked on the west end of A Street); *see also* Dkt. # 27-3.

---

[1] "Line-watch is a blanket term used by agents when referring to their patrol duties. Those duties include responding to sensor activity, looking for signs of cross border entries, checking known crossing locations, and remaining highly visible to deter illegal entries." Dkt. # 27-1 at 3.

[2] The Report of Investigation detailing the interview of Agent Egbert dated July 29, 2026, was submitted by both the Government and Defense. *See* Dkt. ## 30-1, Dkt. # 33-1. When referencing this document, this order cites the first filing, Dkt. # 30-1.

[3] The parties seem to believe that the record is unclear on whether the white Mercedes placed its hazards on before or after parking. *See* Dkt. # 27-1 at ("BPA Egbert saw a white Mercedes drive past him and park at the west end of A St. with its hazard lights blinking"); Dkt. # 27-3 (low-quality video footage showing the white Mercedes driving past Agent Egbert seemingly without hazards until it turned off camera and presumably parked). The Government infers that "the white Mercedes dr[o]ve onto the street with its hazard lights blinking." Dkt. # 30 at 8. On reply, the defense seems to dispute that the hazard lights were ever on. *See* Dkt. # 33 at 4; *but see* Dkt. # 27 at 3. But the Report of Investigation and video can both be true, because the statement can also be understood that the hazards did not turn on until after the white Mercedes parked which is supported by the video. Thus, the Court assumes for the purposes of this motion that the hazards were turned on after the car had parked.

Additionally, the Government, without citation, introduces a fact regarding an out-of-state license plate that is not present in the record before the Court, and so the Court disregards it. Dkt. # 30 at 2-3; *see* CrR 12(e)(6).

A Street is a dead-end with few houses and is the closest paved road to the nearby border. Dkt. # 27-1 at 3; *see* Dkt. # 27-2; Dkt. # 27-3.

After the Mercedes parked, Agent Egbert approached on foot. He identified himself and questioned the occupants (a driver and passenger) about their citizenship and if they possessed documents allowing them to be legally in the U.S. Dkt. # 27-at 3; Dkt. # 30-1 at 3. Defendant, who was the passenger, said that he was from China, and presented his Lawfully Admitted Legal Permanent Resident Card. Dkt. # 27-at 3; Dkt. # 30-1 at 3.

While detained, both Defendant and the driver attempted to make phone calls. Dkt. # 27-1 at 3-4. Agent Egbert, based on his training and experience, knew that human smugglers often use cell phones to alert the border crosser to the presence of law enforcement, and so he seized the phones. Dkt. # 27-1 at 4.

A short time later, another Border Patrol Agent located a woman with a foreign passport and cell phone in the woods about 25 feet north of the white Mercedes. Dkt. # 27-1 at 4. All three individuals were transported to a nearby patrol station. Dkt. # 27-1 at 4. After the arrests, search warrants were obtained to search the three individuals' cell phones. Law enforcement has been unable to access Defendant's cellphone. A warrant has been obtained to search Defendant's Apple iCloud account, but the Court was not provided a status update as to that warrant.

Defendant now moves to suppress the fruit of what he claims was an unlawful seizure, arguing a lack of reasonable suspicion.

## III
## DISCUSSION

The Fourth Amendment protects the right to be free from unreasonable searches or seizures. U.S. Const. Amend. IV. "[A] person has been 'seized' within the meaning of the

Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) ("The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'") (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). An encounter triggers Fourth Amendment scrutiny when it loses its consensual nature and reasonable suspicion is required.[4] *Florida v. Bostick*, 501 U.S. 429, 434, 436-39 (1991).

"Officers on roving border patrols, like the one at issue here, may conduct 'brief investigatory stops' without violating the Fourth Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.' Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (citations omitted); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (expressly applying this standard in reviewing vehicle stops based on reasonable suspicion of smuggling); *United States v. Brignoni-Ponce*, 422 U.S. 873, 880-84 (1975) (same).

"The reasonable-suspicion standard is not a particularly high threshold." *Valdes-Vega*, 738 F.3d at 1078. It requires more than "a mere hunch" but "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. (quoting *Arvizu*, 534 U.S. at 274). The Ninth Circuit has explained:

> In the context of border patrol stops, the totality of the circumstances may include characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver,

[4] The Court assumes without deciding that a seizure occurred.

> appearance or behavior of passengers, and the model and appearance of the vehicle. Not all these factors must be present or highly probative in every case to justify reasonable suspicion. And the facts must be filtered through the lens of the agents' training and experience.

*Id.* at 1079 (quoting *Brignoni-Ponce*, 422 U.S. at 884-85).

The undisputed facts show that Agent Egbert had reasonable suspicion to conduct an investigatory stop. Agent Egbert had been informed by dispatch that they had observed a suspect walking along a Canadian road running parallel to the border. Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; *see also* Dkt. # 27-2. The individual was then seen walking southbound in the woods on the U.S. side of the border at a location known to be frequently used to enter the U.S. without inspection. Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; *see also* Dkt. # 30-2. This individual was immediately north of 4th and A Streets. Dkt. # 27-1 at 3. While on foot looking for the individual, Agent Egbert observed the white Mercedes drive onto the street and park on the east side of A Street (the dead-end side of the street that runs parallel to the woods) with its hazard lights blinking. Dkt. # 27-1 at 3; Dkt. # 30-1 at 3; *see also* Dkt. ## 27-2, 27-3.

Defendant implies that Agent Egbert needed to observe the individual enter the Mercedes or observe some indication that the Mercedes might be hiding persons. Dkt. # 27 at 3. But no such observation is necessary. *See Valdes-Vega*, 738 F.3d at 1080 (holding that "[t]here is no need for an officer to rule out an innocent explanation" "even if it is far from certain that the suspect is actually engaged in illegal activity").

Although the street was residential and turning on hazard lights may be an innocent act, based on the proximity to the border, characteristics of the area, Agent Egbert's knowledge of previous unlawful border crossings in the area, and the known border crossing just north of the

white Mercedes parked location, he had reasonable suspicion to conduct the investigatory stop.[5] Because reasonable suspicion existed, no unlawful seizure occurred and thus the fruit of the seizure need not be suppressed.[6]

## IV

## CONCLUSION

For these reasons, the Court DENIES the motion. Dkt. # 27.

Dated this 13th day of August, 2026.



John H. Chun
United States District Judge

[5] Because the Court can make a finding based on the undisputed facts, it need not hold an evidentiary hearing or oral argument. *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1222 (W.D. Wash. 2015) ("Where the material historical facts are undisputed, however, a court may decide the existence of probable cause or reasonable suspicion as a matter of law.") (citing *United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir.2003); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir.2003); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir.2012)).

[6] Based on this finding, the Court need not consider if the evidence Defendant seeks to suppress is precluded as taken solely for identification purposes. *United States v. Garcia-Beltran*, 389 F.3d 864, 867 (9th Cir. 2004).